CASE 21—PETITION FOR MANDAMUS—JUNE 18.

# Garrard vs. Nuttall.

APPEAL FROM FRANKLIN CIRCUIT COURT.

1. The legislature has no power to authorize a deduction from the salary of a circuit judge, during the period for which he was elected, except for neglect of official duty, as authorized by the 13th section of the 8th article of the constitution. (13 *B. Mon.*, 150.)

2. The Treasurer has no power to determine when a circuit judge has been guilty of such neglect of official duty as to authorize a deduction from his salary; nor has he the right to refuse payment of the warrant of the Auditor drawn in favor of a circuit judge for a portion of his salary, although the same amount had been paid a *pro tem.* judge for services rendered during the same period for which the warrant was issued.

A. J. JAMES for appellant.

JOHN RODMAN for appellee.

JUDGE STITES DELIVERED THE OPINION OF THE COURT :

On the 1st July, 1858, the Auditor issued his warrant in favor of E. F. Nuttall, a circuit judge, for $51 72, the balance of his salary for the quarter ending the 31st June, 1858, which was directed to James H. Garrard, the Treasurer of the State.

This warrant the Treasurer refused to pay, upon the following grounds :

1. That the same amount had been paid L. Hord, Esq., as circuit judge *pro tem.* for services rendered during the same period for which the warrant in favor of Nuttall was issued; and

2. Because of neglect of official duty on the part of said Nuttall, whereby the appointment of said *pro tem.* judge was rendered necessary.

To compel payment, Nuttall applied to the circuit court for a mandamus against the Treasurer, who resisted the same. The circuit court, however, awarded the mandamus requiring the payment of the warrant; and of that order the Treasurer complains.

The right of the Treasurer to withhold the amount of the warrant, upon the grounds presented, is the only matter to be considered.

Garrard vs. Nuttall.

In the case of *Adams vs. The Auditor*, (13 *B. Mon.*, 150,) which involved the validity of the act of March, 1851, (*Session Acts* 1850–51,) so far as it authorized a deduction from the salary of a circuit judge, because of his failure to attend and hold his courts, it was held by this court that said act was inconsistent with the 25th section of the 4th article of the constitution; and that the legislature had no power to authorize a deduction from the salary of a circuit judge, during the period for which he was elected, except for neglect of official duty, as authorized by the 13th section of the 8th article of the constitution.   And it may now be regarded as settled that, except for such cause, no deductions can be made from the salaries of such officers.

The question arises, then, who is to determine when a circuit judge has been guilty of such neglect of official duty as to authorize a deduction from his salary—the Auditor or Treasurer—assuming that such power rests with either of them? For unless the Treasurer has the right, and can—notwithstanding the warrant of the Auditor in favor of the circuit judge—inquire into and pronounce upon his official delinquency with respect to the amount of salary due him, it results that the mandamus in this case was properly allowed.

To determine this point, it will be necessary to look to the laws authorizing deductions from the salaries of circuit judges and creating the officers of Auditor and Treasurer, and prescribing their respective duties.

The Revised Statutes (*p.* 229) declare that, " when from *any cause* the judge of the circuit court fails to attend, or if in attendance, cannot properly preside in a cause or causes pending in such court, the attorneys of the court who are present shall elect one of its members then in attendance to hold the court for the occasion, who shall, accordingly, preside and adjudicate."

And also, that such *pro tem.* judge " shall be paid for his services a sum bearing the same proportion to the salary of the circuit judge as the time he may serve shall bear to the whole number of juridical days in said circuit;" and that " the period of service must be certified to the Auditor of Public Accounts,

*who shall ascertain* the amount and draw *his warrant on the treasury therefor;* and *the same shall be deducted from the judge's salary.*"

These provisions, like those of the act of March, 1851, which was considered in the case of *The Auditor vs. Adams, supra,* neither define, nor attempt to define, what shall be deemed a neglect of official duty, nor to make the deduction on account of such neglect; but authorize it to be made *whenever* the circuit judge fails from *any* cause to attend his courts, or, when in attendance, to preside in causes therein pending.

So far, then, as they direct or allow such deductions to be made—except in cases of official neglect of duty—they come directly within the principle of the case of *Adams vs. The Auditor, supra,* and are inoperative and void.

It is contended, however, that the language of the sections just mentioned is comprehensive, and embraces, though it does not define, cases of official delinquency for which such deductions may be made. Conceding this to be so, and conceding also that the power to inquire into and pass upon such delinquencies for the purpose of adjusting the balance due such officers, rests with the Auditor or Treasurer, questions not now decided, let us proceed to inquire which one of them possesses it.

The constitution (*art.* 3, *sec.* 25) provides that " a Treasurer shall be elected by the qualified voters of the State for the term of two years, and an Auditor of Public Accounts for the term of four years." And also provides that " the duties and responsibilities of these officers shall be prescribed by law."

The law makes it the duty of the Auditor " to keep a correct list of all balances due by the government to individuals and by individuals to the commonwealth"; to "keep an account between the commonwealth and all her civil officers whose salary or wages are payable out of the public treasury, &c." He has power " to require information on oath from any person, party, or privy, touching any matter relative to any account which he is required to state, audit, or settle;" and the right to call upon the Attorney General for advice and counsel, whenever he may deem it necessary, upon all questions of doubt or

difficulty connected with his official duties.    (*Revised Statutes,* *chap.* 5, *secs.* 8, 9, 10, 11, 12, *pp.* 136, 137.)

The 7th section of the same article provides that the warrant of the Auditor shall state the date, amount, and name of the person to whom it is payable, and on *what account,* and out of what fund it is payable; and further, that it shall not be issued unless the money to pay the same has been appropriated by law.

The Treasurer of the State, as the term imports, is the custodian of its money.   His duties and responsibilities are likewise provided by law.   He has nothing, however, to do with the auditing or settlement of accounts existing between the State and its other civil officers.   This duty is alone imposed upon the Auditor.

In some respects the action of the Treasurer is subordinate to that of the Auditor.

The law declares that "the Treasurer shall not receive into nor pay out any money from the treasury, except upon the certificate or warrant of the Auditor." (*Revised Statutes,* 673.)

But he is also forbidden from the payment of money, "even though the Auditor may issue a warrant therefor, unless the law under which the same may be claimed expressly directs and orders that the money shall be paid out of the public treasury." (*Rev. Stat.,* 673.)

And it is under this latter section that the Treasurer claims the right to pass upon the legality and propriety of appellee's demand upon the treasury, as evidenced by the Auditor's warrant.

It seems to us that in this view he is mistaken; and that the section in question does not apply to cases like the present.

This section of the Revised Statutes is a substantial re-enactment of the 2d section of the act of 1800, entitled an act to amend an act "to reduce into one the several acts for the better regulating certain officers' fees," (2 *Digest,* 1517,) which forbid clerks from receiving money from the treasury for certain services therein mentioned; and which, in order to prevent peculations upon the treasury under general provisions, respecting officers' fees, &c., enacted "that no money should thereafter be

drawn from the treasury, under any pretext whatever, unless the law or laws under which the same should be claimed should expressly direct and order that the same should be paid out of the treasury."

The evil intended to be remedied, both by that act and the section in question, grew out of the multitude of claims against the State founded upon the general laws respecting allowances for services not specially provided for; and it was to put a stop to the payment of such claims that both were enacted. The Auditor, as we have seen, has no more right to issue his warrant for claims not expressly authorized to be paid out of the treasury, than the Treasurer has to pay them.

But the objection that there is no law authorizing the payment of the money to the circuit judge cannot properly be made in this case, for the reason that the law expressly provides for the payment of the salaries of circuit judges out of the public treasury. (*Revised Statutes, p.* 590, *sec.* 1.)

The question then is, whether the deduction mentioned in that section of the Revised Statutes, relating to the failure of the judge to attend his courts, if allowable at all, is to be made by the Auditor or Treasurer.

It seems to us that the general duties imposed upon the Auditor, and the character of his office, indicate very clearly that the deduction, if made at all, is to be made by him. He is required to keep an account with all the salaried officers of the Commonwealth—he can examine any one of them touching any matter involved in such account, and in cases of doubt, has the right to call for the advice and counsel of the Attorney General. It is made his duty to pass upon the claims for compensation to officers for their services and other miscellaneous claims; and the 10th section of article 2, chapter 16, Revised Statutes, p. 175, relating to such duties, expressly declares that the salaries and compensation to public officers, when fixed by law, *shall* be paid on the warrant of the Auditor, except his own salary, which shall be paid on such warrant when approved by the Governor. No similar duty is imposed upon any other officer of the State—certainly none such is required at the hands of the Treasurer.

If, however, there remained a doubt upon this point, it seems to us the language of the section authorizing the deduction to be made from the judge's salary, places it beyond all question.

The preceding clauses of the section provide how and when the *pro tem.* judge is to be elected, and the amount of his compensation. The 4th clause then provides, "that the period of such service must be certified to the *Auditor of Public Accounts, who* shall ascertain the amount and draw his warrant on the treasury therefor; and the same shall be deducted from the judge's salary." By whom is the deduction to be made? Certainly, if by any one, it is by the Auditor. He is the officer who is required to ascertain the amount due the *pro tem.* judge —it is his duty to audit and settle the accounts of the civil officers of the State who are salaried, and it is upon his warrant that any balance due them is to be paid.

Our opinion, therefore, is, that the Treasurer, through a commendable and praiseworthy desire to guard the interest of the State, and meet with fidelity the responsibilities of his office, has mistaken the meaning and effect of the law prescribing such duties, and that he had no right to refuse payment of the warrant to appellee.

In thus deciding that the Treasurer could not properly withhold the amount for which the warrant was issued; and that, if the power to pass upon cases of official delinquency in judicial officers, involving their right to the full amount of salary, exists at all, it must be with the Auditor, and not the Treasurer, we would not be understood as determining the extent of the Auditor's power in such case further than it effects the action of the Treasurer.

We only decide that after the Auditor issues his warrant in such case the Treasurer must pay the same, and that such warrant will constitute in his behalf a legal voucher when paid.

Whether the warrant was properly issued, or whether there was a case of official delinquency, or whether the provisions of the Revised Statutes applicable to such cases so define such delinquencies as to authorize the deductions contemplated, are questions not necessarily involved in this case, and not intended to be decided.

The order of the circuit court awarding the mandamus against appellant is, for the reasons stated, *affirmed*.